We'll hear the first case of Baker v. Spinner Good morning, your honors. This is Noreen McCarthy. May it please the court? Good morning. I represent Scott Baker on this appeal. I represented Mr. Baker in his 1983 action, as well as his 440 motion before the County Court of Flaco County. Can you hear me okay? Yes, we can. Thank you. The only question before this court on this case is, are probation officers entitled to absolute immunity when they lie to a county court judge in furtherance of their application to revoke parole? This court has already decided that question in the case of Skodo v. Almanac. This court decided that parole officers are not entitled to absolute immunity. That decision was consistent with posts of other jurisdictions that decided the same. In Skodo, this court decided and concluded that there was no public policy that would be served by granting a parole officer absolute immunity for lies he made in furtherance of his application to revoke parole. In Skodo, the court also said that that was not an adjudicated decision by the parole officer to revoke parole, and that recommending revocation of parole is not integrally related to the judicial process. So we already have federal law here, and what the defense is asking is that this court create new law and say that somehow, based on these facts, despite the lies or in furtherance of an application to revoke parole, these defendants are entitled to absolute immunity. No court has ever held that. That would be creating new law. No court has ever held that there would be any public policy served by allowing a probation officer to have absolute immunity under these circumstances. Nor has any court ever held that that was an adjudicated decision or that it was integrally related to the judicial process. Mr. McCarthy, this is Judge Wessler. Let me ask you this. With regard to the first statement, the statement that was made in the judge's chambers, how is that not simply responding to the judge's request and simply further fleshing out the background of the defendant's appointment here? How is that no different than the pre-sentence report? Well, first of all, in pre-sentence report, the defendant has already been convicted, and the judge directs the probation officer to conduct a pre-sentence investigation. But this didn't initiate anything. The judge asked him a certain question, and he responded. How is that not part of the judicial proceeding? And the parties who were present, there were due process protections there with regard to your client. Well, there weren't. Okay, I'm going to take that in two steps if you don't mind. Okay, the first one, well, in terms of the protection, there was not protection there. If you have a pre-sentence investigation report, the attorneys get that. His lawyer was present. His lawyer could have contested it. The DA was there. The judge was there. So, I don't understand how there wasn't an opportunity for someone to say that that's not true. Well, okay, first of all, everybody was blindsided by this. In the transcript from the 440 here in East… You're not answering my question. You're not answering my question. Those people were present. They could have contested this, right? They could have, but they were blindsided by this. This was completely out of the blue. So, the rule becomes if it comes out of the blue and your lawyer is somehow surprised by it, the due process protections are meaningless? Is that it? Your Honor, there was no due process protection here. Nothing was on the record. It was all in papers without my client present. He had no say in this. He didn't even know what was being said in there. That's not due process. Believe me, I'm not condoning the fact of what happened, but the question is this is an issue of law, not the standpoint of the fact that the probation officer may have made a misrepresentation. But my question again to you is what box does this fit in? This is a response to a judge's question. How is that not part of the judicial proceeding? Correct, and I understand your question, and it's a very good question. Thank you. That's why you're on the fence. I don't know about that, but go ahead. I'm not a fence. Here's the box that it fits into. In White v. Frank, the court has held that a complaining witness only gets qualified immunity. Now, that complaining witness gets qualified immunity whether or not the statement is made in the affidavit in the initial complaint or in the grand jury or even at trial. And even at trial, you have an adversarial position. And in Malley v. Frigg, the Supreme Court says that a police officer requesting a warrant is a complaining witness and is not entitled to absolute immunity. So what we have here is a probation officer who has filed an application to revoke parole. He has gone before the court, and he has provided additional information to the court in support of that application. At that point, he is still serving as a complaining witness, and no court has ever said that a complaining witness gets absolute immunity if they lie on the stand. When was the date of the inchangers' meeting? It was September 3rd. Okay. And so the August 5th statement, or the August statement, the second amended statement had been filed, right? It had been filed. It was an application that was filed. To me, that's similar to an officer filing an affidavit in support of a search warrant, going before the issuing judge, and the issuing judge says in his chambers, you know, what more do you know about this? And the officer says, well, I know that he's also a murderer. And so the judge says, well, I'm going to sign that warrant. Now, that doesn't change and make it part of the judicial process. He's still lying. He's still lying in support of his application. He wants the court to do something. In this case, defendant Sinner wanted the court to take action. He wanted the court to grant his application to revoke parole. And that was still on the table. That was still on the table. This is not like the neutral probation officer who is just providing facts that he found in his investigation, for which he had the chance to talk to the defendant, by the way. So that's where the problem is. We've already gotten a ruling that the defendant's due process right for violating the court. Judge Sack? Yes. Yes. Thank you. No, that's fine. Go ahead. I have no questions at this time. This is Judge Katzmann. I have a question that has to do with a second amended affidavit and statement of violation. Yes. You know, the failure to state a cause of action for deprivation of Baker's constitutional rights. Are you acknowledging or conceding the district court's point and Spinner's argument on appeal that you didn't state a cause of action in connection to your claims regarding the second amended documents? No, I am not. I think that that is a factual issue that still needs to be addressed and that it was premature to dismiss the complaint. And the reason I say that is because that was part and parcel of the court's decision. That was before Judge Main. That entire affidavit was before Judge Main. Can I ask you this? You helped me with this. Could you show me where your client alleges that the false statements in the second amended documents caused the deprivation of his constitutional rights? Well, I'm sorry. I have to tell you I was preparing for the argument and I would have to go back and find the exact paragraph in the complaint on that one. But that is certainly. You'll be back for a rebuttal. So if you could help me on that, that would be great. All right. Thank you, Your Honor. I will do that. I appreciate that. I don't know if I still have any more time here. Or if there's any more questions. You'll have two minutes in rebuttal. Okay. Thank you, Your Honor. Thank you. We'll now hear from your adversary. Good morning, Your Honor. My name is Lorraine Jelinek. I am counsel for Franklin County and also for Probation Officers Spinner and Yetto. The first thing that I would like to point out, obviously there's two sort of issues going on here. The one is Spinner's opinions during the September 3rd, 2015 conference and then also the August 10th, 2015, the second amended affidavit. Obviously, the real issue here is the function that the probation officers had engaged in. And there's much law regarding whether – so this question really turns on whether the function is subject to the procedural safeguards of the judicial process. And that's really the crux of determining whether or not absolute immunity versus qualified immunity applies. And as plaintiff counsel had stated before, the important thing to emphasize here is that it is not the officials or the government officials' job title or status, such as whether or not they are a complaining witness, a defendant, whatever they may be. The status and their title is just not relevant to the determination of whether or not absolute immunity applies. It's the function that these probation officers had engaged in at the time. And I think that Your Honors had mentioned before that with respect to Spinner's statements during the in-chambers conference, you really cannot get – as far as probation officers' actions go, you really cannot get much closer to a judicial function or a prosecutorial function than Spinner was during this conference. And as the district court correctly determined, he responded in direct response to the sentencing judge. His information – I'm sorry? Judge Wesley will have some questions. Yeah. Obviously, I have a sense of – well, I focused on that in the first round, but what about the second? The second statement, the amended – or the second amended affidavit or whatever that was submitted, had the probation revocation process been commenced at that time? Absolutely, Your Honor. It was actually commenced – so the probation department initially filed the first declaration of delinquency on June 16, 2015. The county court had officially initiated this process the following day, on June 17, 2015. The county court did this – It's been a long, long time. It's been a long, long time since I was a state trial court judge, but my recollection was that the declaration of delinquency was the same now as it is then. So your view is that it had already begun, but does that matter if this could be viewed as a complaining witness document as opposed to an initiation document? It does with respect to, again, getting back to if there were these procedural safeguards in place at the time that the probation officer had engaged or had filed this affidavit. Don't the regulations seem to require the probation officer to file additional information with regard to additional crimes or violations that the probationer may have committed? They do, Your Honor, yes. There's no discretion. Is there discretion there or not? Well, there definitely would be discretion on the part of the probation officer, Spinner, who was the supervising probation officer and had signed on that affidavit even before it was filed. The real significant part to that is that there's no question that this probation violation proceeding had been commenced. Even prior or even after this proceeding was initiated on June 17th, there was an additional affidavit filed adding a seventh violation of probation on July 24th. Even after that, on August 5th, 2015, the plaintiff was arrested in his home. He was arrested in his home where he was charged with three additional counts of criminal possession and one additional count of unlawful possession of marijuana, which is not being contested on this appeal. Finally, on August 10th, 2015, after the probation department was able to get in communication with the Tupper Lake Police Department, who was also who assisted in the plaintiff's arrest, had done a field test confirming that there was, in fact, methamphetamine discovered at the plaintiff's residence on August 5th, the day that they searched his residence. And that is what? Go ahead and finish your thought. I apologize. I didn't mean to interrupt. That's okay. Let me ask you, Judge Katzman asked your opponent, because the absolute immunity kind of breaks out as the two aspects here, the response in chambers and then the truthfulness of the impact of the August 5th Second Amendment Statement. You assert that with regard to the second, that there's no cause of action because there's no connection between that and the period of time that he spent incarcerated. Is that true, you? I'm saying that it was, there's no argument that these procedural safeguards were in place and that it was an adversarial proceeding at the time. I'm speaking to an alternate ground to dismiss the complaint that it failed to plead a cause of action as to the second statement. Right, right. And in addition, so even in addition to the absolute immunity argument, it has, I think it's important to emphasize that this has, the alternative reason that the lower court had dismissed this claim for the affidavit for failure to state a claim has not even been contested on appeal. So in any event, that the lower court's decision would stand with regard to that argument. All right. Thank you. Thank you. Judge Sack? Thank you. I'm listening. Go ahead. Do you have any questions? No. Okay. This is Judge Katzmann. My question is, or a question that I'd like to pose to you is that, what's to stop anyone from coming into a proceeding like this and not tell the truth? Say all kinds of things that are, turn out not to be accurate with respect to a defendant. And then say, well, you know, protected by absolute immunity. It's a judicial proceeding. Are you basically asking for a blank check? No, Your Honor. Also, what I wanted to emphasize in regard to that is that when you're really looking at the absolute immunity question of law, it has, it's well known that the absolute immunity, even if there are allegations of bad faith or potentially, and I'm not saying that there are full statements that were made, like you said, motive is not a consideration in the absolute immunity analysis. This was held in, by this court in Dorman v. Higgins. It was held in Skies v. James in this court. It's just simply not, it's separate and apart from the actual actions as long as these procedural safeguards were put in place. Motive is simply not a consideration here. I'm not really talking about motives. I'm just talking about empirically where somebody does something that is inaccurate. Right. And that holds sway with the court. Can that person just do that with impunity? And in Dorman, the argument can be made that Dorman is a different case, and I'd be interested in your view. In Dorman, as I understand it, the court granted the probation officer immunity in connection with the preparation and furnishing of the PSRs in part because really three, at least three reasons. One, the defense and the defendant were given an opportunity to review the PSR. The defendant could challenge the accuracy of the report and require the government to prove its accuracy by preponderance of the evidence. And any determination by the trial court about the accuracy is reviewable on appeal. How would you respond to the argument that here the defendant wasn't at the conference and alleges that he wasn't given notice of the challenged statements and that even arguably more concerningly, Spinner is alleged to have declined to even put the statements on the record? Well, I think that in response to your question, and I know that we had touched on it a little bit before, there's really no doubt that he was provided his due process protections here. His former criminal defense attorney was in that room right before his sentencing was put on the record, and at that point, everyone knew what the allegations were. Everyone knew what the charges were, and they still made the voluntary decision to plead guilty, not to the charge in the second amended affidavit, but to multiple other charges that plaintiff admitted to that occurred even before this affidavit was filed. It's undisputed that his attorney was there. There were no objections after these statements were said, regardless of what the content was. It's really undisputed that he was provided his due process protections here multiple times. Well, can I ask a question? I mean, the original question that Judge Katzmann asked you was, is it true that here, or is it true that absolute immunity is a blank check? Well, I suppose it's hard. I mean, isn't that what absolute immunity is? The question is whether there should be absolute immunity, or better yet, or closer yet, whether as a matter of law there is absolute immunity. But once you've decided it is absolute immunity as a matter of law, then it is a blank check. I think it's a blank check that I think judges operate under all the time, where it's a higher court that is to check on them. But other than that, the immunity is absolute, and people get hurt. But in any event, I would think that if it's absolute immunity, the answer is yes, it's a blank check. Right, and I think that's, I understand what you're saying. That's getting back to the point where it's so important to determine whether the function or whether the action that was engaged in was engaged in at the time that these procedural safeguards were in place. That was what the lower court underscored. Are you saying that if they weren't there, that absolute immunity in this case depends on whether there were those safeguards in place or not? Or is the absolute immunity come first, and then we wonder about whether it's a good thing to have had absolute immunity? Are you saying that if there were no checks here, as a matter of fact, then there would not be absolute immunity? I think it depends on the function. The law is pretty clear that if, sort of what plaintiff, the examples that plaintiff gave, if there was a police officer applying for an arrest warrant, that's obviously something that is more of an investigative nature, and obviously leaves ultimate discretion to the judge or to the court. But after these are put in place, and there's no doubt that they were in this case, that this parole violation proceeding had already been initiated, I think that that, and on top of the fact that when you're just answering the absolute immunity question of law, where motive is simply not a consideration, I do understand what you're saying about it being a blank check. But I think that's what those judicial safeguards are designed, or what this whole analysis, whether it be absolute or qualified immunity, what point those actions were engaged in, I think that that really serves to sort of finalize that that does not happen, that it is not a blank check. But you're, so you're, I mean, you would therefore concede that in the Supreme Court, and of course, Second Circuit has said, for example, in Dorman, that absolute immunity is rarely granted. Well, I think, again, not as a broad proposition, but I think, again, it just, it really turns on the specific function at the time that it was engaged in. I mean, here, there's really no question about it, but then obviously, in another case, like for an arrest warrant, or, you know, something that had occurred prior to the initiation of the proceeding, then it would be more in line with a qualified immunity. But again, as even plaintiffs had mentioned just previously, they could have contested this. His attorney absolutely could have contested this in the in-chambers conference. They chose not to. So at least for purposes of this case and the facts that are applied here, there's really no question that absolute immunity applies. Thank you. Thank you, Your Honor. We'll now hear two minutes in review. Thank you, Your Honor. Can you hear me okay? Yes. Yeah. Okay. Well, first of all, the court just said that in the Fourth Circuit and the Supreme Court, they said that absolute immunity is rarely granted. But this court said that in Soto as well, and it is rare. And the burden is on the defendant to prove. There is some public policy that would be served by giving him absolute immunity. And in this case, we keep hearing about these safeguards from the other side, but it's a bit ostentatious to even argue that, that we can have a probation officer who will flat-out lie and then say, well, gee, you could have objected, and do it in such a blindsided manner that is too egregious. And so when we keep talking about these safeguards and they keep saying that the defense attorney could have objected, it has to be remembered what the situation is that we're in. We're in there with a young man who's been accused basically of murder, and is going to be told that he's going to go away for a long time if he doesn't take his CO for seven and a half years because probation officer has just lied. So all of that talk about safeguards that the defense keeps raising is really just not the issue. The issue is, do we allow probation officers to flat-out lie in furtherance of their own application to revoke a parolee's parole based on things that are absolutely not true? No matter what stage of the proceeding is in, we would not allow, for example, an officer who lies to get a first warrant, takes a stand with immunity, and again lies about his probable cause for a first warrant. So why would we say that this probation officer can lie before he gets into the courtroom or after he gets into the courtroom? Where do we draw that line? While he's on the courthouse steps? That line is just this imaginary, ridiculous line that allows these probation officers to do exactly what this court questions. So he can submit his first affidavit, and then he can go into the chambers, blindside everybody with no notice, and accuse the defendant of being a murderer, which is basically what happens in this case. Your time has expired, but before you sit down, do you have an answer to my question about the amended complaint? I do. Paragraph 20. Excuse me? Paragraph 20 of the complaint says that the application, the lie in the application, the initial application of August 5th or 7th, whenever that was, was considered in front of the sentencing court and taken into account by that court. While Judge Richards did not focus on that in his decision, that is a question of fact that still should be raised during the 1983 proceedings, and it was premature to dispose of that. That's still an issue. Is that something that was before the sentencing court? Did it contribute to this? Did that lie influence the judge in his decision to impose such a huge sentence on this defendant? And I think that's still a factual issue that's out there. Thank you. Thank you both for your arguments. The court will reserve decision.